UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

**TODD M. LEKAN,**

Debtor.

Case No. 23-11768
Chapter 11

**PLAN OF REORGANIZATION DATED DECEMBER 16, 2024**

Todd M. Lekan, the Debtor, as debtor-in-possession herein (the "Debtor"), pursuant to 11 U.S.C. § 1121, hereby sets forth the following as its proposed plan of reorganization dated December 16, 2024 (the "Plan"):

## ARTICLE 1
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below:

1.1. "Administrative Claim" shall mean a claim for administrative expenses under Section 503(b) of the United States Bankruptcy Code that is an Allowed Claim and is entitled to priority in payment pursuant to Section 507(a)(1) of the United States Bankruptcy Code.

1.2. "Allowed Claim" shall mean any Claim, proof of which is filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and in either case, a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Bankruptcy Rules, or an order of the Court, or (b) as to which any objection has been determined by an order or judgment of the Court allowing such Claim in whole or in part that is no longer subject to appeal, de novo review, or certiorari proceeding, and as to which no appeal, de no review, or certiorari proceeding is pending.

1.4. "Bar Date" shall mean September 3, 2024.

1.5. "Nicolet National Bank", (hereinafter "Nicolet"), the Debtor's pre-petition secured lender, with first lien on Debtor's real property.

1.6. "Avoidance Actions" shall mean any claims or causes of action of the Debtor's estate under or pursuant to Code sections 544, 545, 546, 547, 548, 549, 550, 551, or 553.

1.7. "Causes of Action" shall mean, whenever arising, all rights, claims, and causes of action accruing to the Debtor or the Trustee, before, on, or after the Petition Date, and not otherwise settled or compromised pursuant to this Plan or otherwise, including, without limitation, all Avoidance Actions.

1.8. "Claim" shall mean any right in existence on the Confirmation Date against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) an equitable remedy for a breach of performance if the breach would rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.9. "Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

1.10. "Confirmation Date" shall mean the date upon which the order confirming the Plan is entered by the court in accordance with the provisions of Chapter 11 of the Code.

1.11. "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.12. "Court" shall mean the United States Bankruptcy Court for the Western District of Wisconsin in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.13. "Creditor" shall mean any person or its assignee that holds a claim against the Debtor for unsecured debts, liabilities, demands, or claims of any character whatsoever, including any under-secured creditors.

1.14. "Debtor" shall mean Todd M. Lekan, the Debtor in this chapter 11 case.

1.15. "Domestic Support Obligation" shall mean an unsecured priority claim owed to Heather M. Lekan.

1.16. "Effective Date" shall mean the day that is 14 days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all conditions to effectiveness of the Plan are satisfied.

1.17. "General Unsecured Claim" shall mean an unsecured Claim without priority.

1.18. "IRS" shall mean the United States Treasury, Internal Revenue Service.

1.19. "Krekeler Law" shall mean Krekeler Law, S.C., counsel for the Debtor in this Chapter 11 Case.

1.20. "Petition Date" shall mean the date on which the Debtor filed a voluntary petition for relief under Chapter 7 on October 5, 2023. On April 26, 2024, the Debtor filed his Motion to Convert Chapter 7 Case to Chapter 11. On May 21, 2024, the Bankruptcy Court entered the Order converting the Debtor's case under Chapter 7 to Chapter 11.

1.21. "Plan" shall mean this Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

1.22. "Priority Claim" shall mean a Claim entitled to priority under Section 507(a)(8) of the Code.

1.23. "Rule" and "Rules" shall mean the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules as adopted by the Court.

1.24. "Secured Claim" shall mean a Claim arising on or before the Petition Date (or thereafter upon approval of the Court) that is secured by a valid lien on property in which the Debtor's estate has an interest which is not void or voidable under any state or federal law, including the provisions of the Code.

1.25. "Secured creditors" shall mean creditors who hold a lien, security interest, or other encumbrance which has been properly perfected, as required by law with respect to the property owned by the Debtor, prior to the filing of this case, or thereafter as authorized and ordered by the Court.

1.26. "WI DOR" shall mean the Wisconsin Department of Revenue.

1.27. "Reorganized Debtor" shall mean the Debtor after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

Terms not defined in this Plan that are defined in the Code shall have the meanings stated in the Code.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests herein are hereby classified as follows:

2.1 **Administrative Claims** The costs and expenses of administration of the Debtor's Chapter 11 case, as defined in the Code, including those for which application shall be made, provided said costs and expenses are allowed, approved, and authorized to be paid by the Court. Such costs include all pre-confirmation fees payable under 28 U.S.C. § 1930, which either have been paid or shall be paid on the Effective Date of the Plan, and all post-confirmation fees as required by law.

2.2 **CLASS 1** - The secured claim of Nicolet.

2.3 **CLASS 2** - The secured claim of the IRS.

2.4 **CLASS 3** – The unsecured priority claim of the IRS.

2.5 **CLASS 4** – The unsecured priority claim of the Domestic Support Obligation.

2.6 **CLASS 5** – Any general non-priority unsecured claims which have not been disputed by the Debtor.

2.7 **CLASS 6** – The equity interests of the Debtor, if any.

## ARTICLE 3
## TREATMENT OF CLAIMS AND INTERESTS

**3.1 Administrative Claims.** Administrative claims include all costs and expenses of the administration of the Debtor's case allowed under Section 503(b) of the code and entitled to priority

under Section 507(a)(1) of the Code. The Plan provides for payment in full of all allowed administrative expenses on the effective date of the Plan, unless other treatment is specifically set forth in the Plan. Administrative Priority Claims include fees of professionals employed by the Debtor, including attorneys and accountants, and quarterly United States Trustee fees.

Debtor's Attorney's Fees: Krekeler Law, S.C. ("Krekeler Law") agrees that its claim for attorneys' fees and expenses shall be paid utilizing funds held in the firm's trust account in the amount of $8,830.27, upon approval by the Court of its application for compensation. Such funds shall remain property of the Debtor's bankruptcy estate, and Krekeler Law shall continue to hold all funds in its trust account until this Court enters an order approving and authorizing payment to Krekeler Law upon Krekeler Law's filing of an application for compensation pursuant to the Applicable Bankruptcy Code and Rules.

Any remaining balance approved by the Court, but not covered by the funds held in trust, shall be paid in full of Debtor's net disposable income within one year from the Effective Date. The amount of such fees and expenses to be approved is estimated to be $22,000.00. Such payments, however, shall be made only upon approval by the Court of such administrative expense claims.

United States Trustee Quarterly Fees: Quarterly fees owed to the United States Trustee ("UST") will be paid as incurred and in full as of the Effective Date. The Debtor is not delinquent in any payments to the UST. Quarterly fees may continue to be generated until such time as a final Order is entered closing this case by the Court.

**3.2 CLASS 1 – Secured Claim of Nicolet.** This claimant has a secured claim, as of the Petition Date, in the amount of approximately $50,837.68, which is secured by Debtor's real property located at 9355 Jackson Heights, Harshaw, Oneida County, Wisconsin. The amount of the allowed secured claim shall be paid in full with interest thereon at the rate of 4.25 percent per annum amortized over 15 years with monthly payments in the amount of $476.45, principal and interest until paid in full.

The holder of this claim shall retain its security interest upon Debtor's real property until such time as the allowed secured claim has been paid in full, at which time the holder of this claim shall execute documents reasonably necessary to release its security interest in said real property. All other terms and provisions contained in the loan documents between Debtor and this claimant shall remain in full force and effect.

Class 1 is an unimpaired class.

**3.3 CLASS 2 – Secured Claim of the IRS.** The claim of the IRS is impaired under the Plan. The secured claim of the IRS in the amount of $44,301.76, shall be paid in full with eight percent (8%) interest per annum amortized over forty-six (46) months measured from the Petition Date, to be paid in monthly payments of $1,121.47. Payments made to the IRS for its secured claim are made pursuant to 11 U.S.C. § 1129(a)(9)(D).

Class 2 is an unimpaired class.

**3.4 CLASS 3 – Priority Unsecured Claim of the Internal Revenue Service.** The priority unsecured claim of the IRS in the amount of $19,766.09, shall be paid in full with eight percent (8%) interest over forty-six (46) months measured from the Petition Date, to be paid in monthly

payments of $500.37. Payments to the IRS for its priority unsecured claim are made pursuant to 11 U.S.C. § 1129(a)(9)(C).

Class 3 is an unimpaired class.

**3.5 CLASS 4 – Priority Unsecured Claim of Domestic Support Obligation.** Debtor is current with his domestic support obligation of $3,000.00 per month and shall continue to pay such amount as required during and after the term of the Plan pursuant to the terms of the Stipulation and Order Regarding Non-Modifiable Limited Term Maintenance entered into by the Debtor and his former spouse on September 9, 2022. Payments of the Debtor's Domestic Support Obligation are made pursuant to 11 U.S.C. § 1129(a)(14).

Class 4 is an unimpaired class.

**3.6 CLASS 5 – All General Non-Priority, Unsecured Claims.** Class 4 consists of all allowed general non-priority unsecured claims which total approximately $313,731.15 according to claims scheduled as undisputed, non-contingent, and liquidated or filed proofs of claim. Payments to these creditors shall be made pro-rata based on the Debtor's projected net disposable income. The Debtor's net disposable income is projected to be $3,556.00 before accounting for unpaid Administrative Claims estimated to be $22,000.00.

Therefore, for the first year of the Plan, the Administrative Expense Claim is estimated to receive $1,834.00 per month. As a result, for first year of Plan, Class 5 claimants will share approximately $1,889.00 per month on pro rata basis. Beginning the second year of the Plan and for 34 months, Class 5 claimants will share approximately $3,723.00 per month on a pro rata basis. For the remaining 14 months of the Plan, Class 5 claimants will share approximately $5,344.00 per month on a prorated basis.

Class 5 is an impaired class.

**3.7 CLASS 6 – Equity Interests of the Debtor.** All equity interests of the Debtor shall be retained by him upon confirmation of this Plan.

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any and all executory contracts or unexpired leases to which the Debtor was a party as of the Petition Date shall be deemed rejected as of the Effective Date, *except* with respect to the following parties:

4.1. **Residential Lease.** The Confirmation Order shall authorize and approve the Debtor's assumption of his current residential lease for the property located at 1520 Elm Street, Apt #322, Wausau, Wisconsin 54401.

4.2 **Residential Lease.** The Confirmation Order shall authorize and approve the Debtor's assumption of his daughter's lease that he is a co-signer on with Marissa Metelica and Jason Reif, 1034 Halsey St., #1, Brooklyn NY 11207-0000.

# ARTICLE 5
# IMPLEMENTATION OF THE PLAN

5.1     To effectuate the proposed Plan, the Debtor shall maintain his employment with Gestalt Enterprises and continue operations of his LLC, Todd Lekan LLC. The Debtor will utilize profits, revenues, income from operations, income from the Debtor's employment, and cash on hand on the Effective Date.

5.2     Except as may be expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor.  The Reorganized Debtor reserves the right to sell or transfer any of its property, with the proceeds to be distributed to lien holders according to their priorities.

5.3     Upon the Effective Date of the Plan, creditors shall have 14 business days to satisfy all outstanding judgment liens, and dismiss all pending suits, except as particularly set forth herein.

5.4     Interest on all allowed secured claims shall commence upon the Effective Date of the Plan.

5.5     Unless otherwise expressly set forth herein, payments to creditors under the Plan shall commence within 30 days from the Effective Date of this Plan.

5.6     The Reorganized Debtor may prepay any amount to any Class at any time without penalty.

5.7     No distributions of under $5.00 shall be made by the Reorganized Debtor, and no payments shall be made on claims under that amount. Any distribution checks which have not been negotiated and cleared six months after their distribution may be cancelled by the Reorganized Debtor without further liability for that distribution.

5.8     All distributions shall be mailed to creditors at the addresses shown on the Debtor's schedules, except those creditors who have filed Proofs of Claim or notices of appearance in this action shall have their distribution checks sent to the addresses shown on those documents. Any creditor may change the address for mailing of its distribution check by written notice to counsel for the Debtor. Any distribution checks properly sent to such addresses which are returned shall become the property of the Reorganized Debtor without further liability for such distributions.

5.9     Confirmation of this Plan shall not preclude or estop the Debtor from pursuing any claims of the estate, including any Avoidance Actions, nor any other claims against any of the Debtor's creditors for offset.

5.10    The Debtors may prepay any amount to any Class at any time without penalty.

5.11    The Reorganized Debtor.  The Debtor shall emerge from Bankruptcy as the Reorganized Debtor, with all of the rights, powers, duties and obligations as set forth below.

(a) <u>Vesting of all Property</u>.  Except as expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor.

(b) <u>Governance, Powers and Duties</u>.  On and after the Effective Date, the holders of the Interests in the Debtor shall be the managing partners of the Reorganized Debtor, and the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Court. The Reorganized Debtor shall also have the powers, duties, and obligations set forth in this Plan. On and after the Effective Date, all actions required of the Debtor shall be taken by the Reorganized Debtor, or its designee, in the name of and on behalf of the Debtor and its bankruptcy estate. The Reorganized Debtor shall be authorized to execute documents on behalf of the Debtor and its bankruptcy estate. The duties, responsibilities and obligations of the Reorganized Debtor include, but are not limited to, all matters for which the Court is retaining jurisdiction, including the following:

- making Distributions under the Plan;

- preparation and filing of tax returns, on behalf of the Debtor, its bankruptcy estate, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code;

- requesting and receiving of W-9 federal tax forms for any party who is entitled to receive a distribution on account of a Claim or Interest;

- prosecution and resolution of Causes of Action, if any, including any Avoidance Actions;

- Claims objections and reconciliation;

- payment of any post-confirmation fees due to the Office of the United States Trustee; and

- the compromise and settlement of Claims, Causes of Action, and other proceedings and matters.

(c) <u>Attorney Client Privilege to Extend to Reorganized Debtor</u>. The Reorganized Debtor shall stand in the same position as the Debtor with respect to any right the Debtor may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtor shall succeed to all of the Debtor's rights to preserve, assert or waive any such privilege.

(d) <u>Retention of Professionals</u>. The Reorganized Debtor may retain such attorneys, accountants, advisors, expert witnesses, and other professionals as it shall consider advisable without necessity of approval of the Court. Persons who served as professionals to the Debtor prior to the Effective Date may serve as

professionals to the Reorganized Debtor. The fees and expenses of the Reorganized Debtor and professionals retained by it shall be paid in the ordinary course of business and without Court review or approval.

(e) <u>Causes of Action Retained and Preserved.</u> All causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan shall be retained by the Reorganized Debtor and preserved. Except as otherwise expressly provided in the Plan, the Reorganized Debtor retains all rights, claims, defenses, setoffs, recoupment, and causes of action the Debtor or its estate may have against any third parties and may pursue and/or enforce such retained rights, claims, defenses or causes of action in accordance with applicable non-bankruptcy law.

(f) <u>Capital Gains Taxes.</u> Any taxes payable on capital gains realized by the Debtor as a result of the disposition of certain assets under the Plan, or by any person or entity contributing assets to the Debtor under the Plan, shall be paid when and as they become due. The Debtor reserves the right to change the contemplated structure of the Reorganized Debtor, including the ability to decline any assets that would be transferred to it under this Plan, in order to minimize the overall tax liability; provided, that such changes shall not relieve the Debtor from the obligation to treat Claims as provided in Articles 3.

## ARTICLE 6
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction, and if the case is closed reopen it, for the following purposes, or as otherwise permitted by law:

6.1 **Objections to Claims.** To hear and determine any objections to the allowance of Claims, and requests for the estimation or liquidation of Claims.

6.2 **Fee Applications.** To hear and determine any and all applications for compensation of professional services and disbursements.

6.3 **Avoidance Actions**. To hear and determine any Avoidance Action or other proceedings to set aside (or preserve for the benefit of the Estate) or recover any property under applicable provisions of the Bankruptcy Code or other federal or state law.

6.4 **Recover Estate Assets.** To recover all assets of the Estate, wherever and however located.

6.5 **Pending Matters.** To hear and determine any pending applications, motions, adversary proceedings, and other contested matters not resolved by the Plan.

6.6 **Modification of Plan.** To modify the Plan to the extent permitted by the Plan and the applicable provisions of section 1127 of the Bankruptcy Code.

6.7     **Enforcement of Payments, Rights, and Interests.** To enforce the terms and provisions of payments, rights, and interests required or created by the Plan.

6.8     **Executory Contracts and Unexpired Leases**. To hear and determine all Claims or controversies arising from the assumption or the rejection of any executory contracts or unexpired leases and to consummate their assumption or the rejection.

## ARTICLE 7
## CLOSING AND REOPENING OF THE CASE

7.1     **Closing**.  Upon substantial consummation of the Plan, the Debtor may apply for an order closing the case under section 350(a) of the Bankruptcy Code. The Plan shall be deemed to be substantially consummated after (a) the order confirming the Plan has become final; (b) the Debtor or the Reorganized Debtor has assumed the business of the management of the property dealt with by the plan; (c) payments under the Plan have commenced, and (d) all motions, applications, contested matters, and adversary proceedings have been finally resolved.

7.2     **Reopening**.  The case may be reopened pursuant to Bankruptcy Code § 350(b) to administer assets, to grant the Debtor other relief, to seek conversion or dismissal upon occurrence of a subsequent material default under the plan, to hear and resolve any matter or proceeding over which the Court has retained jurisdiction, or for other cause.

## ARTICLE 8
## OTHER REQUIRED PROVISIONS

8.1     Any payments made or to be made by the Debtor for services or for costs and expenses in connection with this case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of the Court, as reasonable.

8.2     All quarterly fees payable under 28 U.S.C. Section 1930 shall be paid on or before the effective date of the Plan, as required by 11 U.S.C. Section 1129(a)(12). The reorganized Debtor shall continue to file quarterly fee statements and pay quarterly fees when due until this case is converted, dismissed, or closed. The Bankruptcy Court shall retain jurisdiction necessary to enforce the provisions of this paragraph.

8.3     Confirmation of this Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under this Plan.

8.4     The Debtor has no retirement benefits which are required to be continued under 11 U.S.C. Section 1129(a)(13).

# ARTICLE 9
# CONCLUSION

The proposed Plan set forth herein reflects the Debtor's best efforts to reorganize in an orderly fashion. The Plan attempts to provide full payment to secured creditors and a substantially greater dividend to unsecured creditors than they are likely to receive if Debtor liquidates his assets.

This Plan deals fairly and equitably with all of the creditors involved and approval of this Plan is in the best interests of the Debtor's creditors.

Dated this 16th day of December 2024.

**KREKELER LAW, S.C.**

By: /s/ Noe J. Rincon
Noe J. Rincon, State Bar No. 1124893
*Attorneys for the Debtor in Possession,*
*Todd M. Lekan*

**ADDRESS:**
26 Schroeder Ct, Ste. 300
Madison, WI 53711
Phone: 608-258-8555
Fax: 608-258-8299