| UNITED STATES BANKRUPTCY COURT | WESTERN DISTRICT OF WISCONSIN |
|---|---|//

UNITED STATES BANKRUPTCY COURT     WESTERN DISTRICT OF WISCONSIN

In re:

**TODD M. LEKAN,**

Debtor.

Case No. 23-11768-cjf
Chapter 11

## DEBTOR'S DISCLOSURE STATEMENT DATED DECEMBER 16, 2024

### INTRODUCTION

Pursuant to Section 1125 of the United States Bankruptcy Code (the "Code"), Todd M. Lekan, the debtor and debtor-in-possession herein (the "Debtor"), by and through his counsel, Krekeler Law, S.C., submits this Disclosure Statement in support of the Debtor's Plan of Reorganization (the "Plan"*)*. The Plan was filed with the United States Bankruptcy Court for the Western District of Wisconsin (the "Court"), and a copy of the Plan is attached hereto as **Exhibit A.**

The Code requires the Debtor to provide adequate information for creditors to make an informed judgment about the Plan. This Disclosure Statement is submitted by the Debtor to all its known creditors to disclose the information the Debtor deems material, important, and necessary for his creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Plan.

Once the Court has approved the Debtor's Disclosure Statement, all creditors will be forwarded a copy of the Order approving the Disclosure Statement, the approved Disclosure Statement, the Plan, and a ballot to be completed by each creditor. Creditors will also be provided with notice of the hearing on confirmation of the Plan and may attend such a hearing. As a creditor, your acceptance of the Plan is important. In order for the Plan to be confirmed, creditors voting, which hold at least two-thirds in amount and more than one-half in number of the allowed claims of the various classes, must vote in favor of the Plan and holders of two-thirds in amount of equity security interest, in each class voting on the Plan, must vote in favor of the Plan. In the event the requisite acceptances are not obtained, the Court may, nevertheless, confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLANS, OTHER THAN AS CONTAINED IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR TO WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE COURT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DATA IN THE DEBTOR'S POSSESSION IS BASED UPON THE CURRENT RECORDS OF THE DEBTOR AS OF THE DATE OF THIS DISCLOSURE STATEMENT, UNLESS OTHERWISE STATED. THIS DATA IS BASED ON THE RECORDS KEPT BY THE DEBTOR AND IS TRUE AND ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE. HOWEVER, A DEBTOR IN POSSESSION IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS FREE FROM ERROR, ALTHOUGH EFFORT HAS BEEN MADE TO MAKE SURE THAT THE INFORMATION FAIRLY REPRESENTS THE CURRENT POSITION OF THE DEBTOR.

**VOTING PROCEDURES AND CONFIRMATION OF THE PLAN**

The Court will schedule a Confirmation Hearing on and will direct that notice of the Confirmation Hearing be given to holders of all claims against the Debtor in accordance with the Federal Rules of Bankruptcy Procedure. At the Confirmation Hearing, the Court will enter an order confirming the Plan (the "Confirmation Order") if there are enough votes to accept the Plan and the statutory requirements have been met. The hearing on the Confirmation of the Plan may be continued or adjourned without further notice to creditors except those who appear at the initial hearing.

The Court will direct acceptances or rejections of the Plan be filed in writing by the holders of allowed claims against the Debtor by the date set forth on voting ballots, to be provided at a date to be set by the Court.

Creditors whose claims are "impaired" under the Plan may vote to accept or reject the Plan. Creditors whose claims are "unimpaired" are not entitled to vote.

**BACKGROUND OF THE DEBTOR HISTORY OF CHAPTER 11 CASE**

<u>Background of the Debtor and Financial Circumstances Prior to Bankruptcy</u>

Todd M. Lekan, (hereinafter "Debtor"), owns and operates Todd Lekan LLC, which is a software development contractor (the "LLC"). The Debtor has operated the LLC since 2008, and is the company's sole employee. Beginning in 2023, the Debtor joined Gestalt Enterprises, which does business as Digital Giant ("Gestalt"). The Debtor is employed by Gestalt as its Chief Technology Officer. The Debtor earns a salary from his employment through Gestalt, which has significantly increased his total income and will enable the Debtor to support his proposed Plan.

The Debtor currently rents his residence located at 1520 Elm Street, Apt #322, Wausau, Wisconsin. The Debtor previously rented a residence in Manhattan, New York, though he chose to move back to Wisconsin in May 2024. The Debtor's operation of the LLC has progressed such that the Debtor intends to continue its viable operation while supplementing his income through his employment with Gestalt.

The Debtor's financial difficulties began in 2015 with the accrual of federal income tax debt arising from the Debtor's self-employment and operation of the LLC. In years subsequent, the Debtor continued to accrue federal income tax debt that was not serviced. Debtor had

previously sought to resolve these debts through an installment agreement with the Internal Revenue Service as recently as 2022, though to no avail.

In October of 2023, the Debtor's prepetition bank accounts were levied by the Internal Revenue Service. To avoid the levying of the Debtor's prepetition bank accounts, which would have substantially limited the Debtor's ability to continue the operation of the LLC, the Debtor made the decision to proceed with filing of a petition for relief under the Bankruptcy Code.

The Purpose of this reorganization is to enable the Debtor to service and restructure his debt, while he continues to operate and preserve his assets.

The Debtor's projected business income and monthly budget are attached hereto and incorporated herein by reference as **Exhibit B and C, respectively.** The Debtor's liquidation analysis is attached hereto and incorporated herein by reference as **Exhibit D**.

### The Debtor's Pre-petition Financing and Encumbrance of Real Property

Real property located at 9355 Jackson Heights, Harshaw, WI

1. The Debtor is owner of real property located at 9355 Jackson Heights, Harshaw, WI, which presently consists of a vacant lot of approximately less than one (1) acre of land ("Harshaw Property"). Based upon online valuations of the property, the Debtor believes that the Harshaw Property is worth approximately $69,590.00. The value does take into consideration the cost of sale if the Debtor were to sell the Harshaw Property. The Debtor does not intend to sell the Harshaw Property at this time.

2. Upon the information and belief of the Debtor, alongside the proofs of claim filed in this case, the following Creditors assert, or may assert, a lien on the Harshaw Property:

    **Nicolet National Bank:** The Debtor is indebted to Nicolet National Bank ("Nicolet"), pursuant to a note and mortgage with a total outstanding balance of $50,837.68 as of the Petition Date. The obligation to Nicolet is secured by a properly perfected first-position real estate mortgage encumbering the Harshaw Property, dated October 29, 2020, and recorded in the office of the Oneida County Register of Deeds on November 2, 2020, as Document No. 812612.

### History of the Chapter 11 Case

On October 3, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code as the above-captioned case (the "Case").

On April 26, 2024, the Debtor filed a motion to convert his bankruptcy case under Chapter 7 of Title 11 of the United States Code to a case under Chapter 11 of Title 11 of the United States Code (*See* Docket Entry #39).

On May 21, 2024, the Court in this Case granted the Debtor's motion to convert this Case and entered an order converting this Case from Chapter 7 to Chapter 11 (*See* Docket Entry #44).

On May 29, 2024, the Debtor filed an application to employ Krekeler Law, S.C. as the debtor-in-possession attorney (See Docket Entry #47) and the Order Authorizing Employment of Proposed Counsel was entered on June 11, 2024 (See Docket Entry #55).

On June 4, 2024, the Debtor filed amended schedules and statements with the Court as well as the Chapter 11 Statement of Monthly Income (See Docket Entries #50 and #51).

On July 25, 2024, the Debtor filed a motion to set the last day to file proofs of claim (See Docket Entry #65), and the Order granting said motion was entered on August 1, 2024 (See Docket Entry #73).

Since the conversion of this Case, the Debtor has continued to operate the LLC and anticipates its continued operation for the foreseeable future. The Debtor further contemplates employing an accountant for the remainder of the Case and has continued to file the monthly operating reports required of Chapter 11 debtors-in-possession since the conversion of this Case to a case under Chapter 11 of the Bankruptcy Code.

## SUMMARY OF PLAN OF REORGANIZATION AND FEASIBILITY

The Debtor filed its proposed Plan for consideration by its creditors. The Plan provides for the maintenance of, or payment in full of, allowed secured claims. The Plan provides for the payment in full of all allowed priority unsecured claims. The Plan also provides for distributions to general unsecured creditors in the amount of approximately 72% of their general unsecured claims, which is substantially more than wat the general unsecured creditors would have received if the debtor would had proceeded with a Chapter 7 case. All proposed payments under the Plan shall be made monthly from the Debtor's continued operation of the LLC and his wage earnings from his employment with Gestalt. The amortization of some of these obligations is extended to provide for adequate cashflow and debt service. A copy of the Plan, provided as a summary pursuant to 11 U.S.C. § 1125(b), and is attached as **Exhibit A**.

Attached as **Exhibit B** is the one-year cashflow projection of the Debtor's business, which was prepared internally by Debtor and his counsel. These projections were determined by reviewing the Debtor's year-over-year revenue and expenses and the Debtor's current operations. Debtor expects this income and these expenses to continue during the duration of the Debtor's Plan.

Attached as **Exhibit C** is the Debtor's budget, which was prepared internally by Debtor and his counsel. The Debtor's budget includes the Debtor's wages and business revenue, personal and business expense calculations, and a projection of the funds available to service the unsecured claims provided for in the Plan.

## LIQUIDATION ANALYSIS

If the Debtor's assets were liquidated, general, unsecured creditors would receive no distributions. However, under the Plan, unsecured creditors with allowed claims shall receive pro-rata payments from the Debtor's commitment of all of his disposable income. A liquidation analysis of the Debtor's assets is attached hereto and incorporated by reference as **Exhibit D**.

## RISK FACTORS.

Certain substantial risk factors are inherent in most Chapter 11 plans. In this case, the only significant risk would be the loss of Debtor's employment or the wind down of the Debtor's web development operation. In any event, secured creditors would be entitled to enforce their liens and the unsecured claimants could pursue their rights under applicable non-bankruptcy law.

## POTENTIAL TAX CONSEQUENCES

The following is a summary of potential federal income tax consequences of the implementation of the Plan. No opinion of counsel has been obtained and no ruling has been requested or obtained from the Internal Revenue Service with respect to any of the tax aspects of the Plan, and the discussion set forth herein is not binding upon the Internal Revenue Service.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES TO THEM, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN.

### Tax Consequences for Creditors

Creditors may be required to recognize income or may be entitled to a deduction as the result of the implementation of the Plan. The exact tax treatment will depend on each creditor's method of accounting and the nature of each Claim in the hands of the creditor. In general, holders of Claims should recognize a gain or loss in an amount equal to the difference between (1) the value of the property or cash received and (2) the Claim holder's adjusted tax basis in the Claim. Where gain or loss is recognized by a holder of a Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was acquired at a market discount or for the sale of inventory, and whether and to what extent the holder had previously claimed a bad debt deduction.

### Tax Consequences for Debtor

Upon confirmation of the Plan, the terms of the Debtor's aggregate outstanding indebtedness will be unchanged. Generally speaking, a discharge or forgiveness of indebtedness creates taxable income for the taxpayer granted the discharge. However, the Debtor will not receive a discharge of indebtedness in this case until he has made all plan payments. The Internal

Revenue Code provides an exception where the taxpayer is under the jurisdiction of a bankruptcy court in a case under the Bankruptcy Code, and the taxpayer is granted a discharge of debt by the court or pursuant to a plan approved by the court. There is a possibility that the various transfers and transactions contemplated by the Plan will result in a reduction of certain tax attributes of the Debtor, including, but not limited to, loss carry-forwards and/or capital gains tax liability to the Debtor and holders of an interest in the Debtor.

## CONCLUSION

All of the information contained in this Disclosure Statement represents the best efforts of the Debtor to provide relevant and necessary information. This Statement represents the best estimates of Debtor regarding his assets and liabilities, and his income and expenses, including future income projections. This Disclosure Statement should be read and reviewed in conjunction with the Plan of Reorganization.

Dated this 16th day of December 2024.

**KREKELER LAW, S.C.**

By:   */s/ Noe J. Rincon*
      Noe J. Rincon, SBN 1124893
      *Attorneys for Debtor in Possession,*
      Todd M. Lekan

**ADDRESS:**
26 Schroeder Ct., Suite 300
Madison, WI 53711
Phone: 608-258-8555
Fax: 608-258-8299
nrincon@ks-lawfirm.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

**TODD M. LEKAN,**

Debtor.

Case No. 23-11768
Chapter 11

**PLAN OF REORGANIZATION DATED DECEMBER 16, 2024**

Todd M. Lekan, the Debtor, as debtor-in-possession herein (the "Debtor"), pursuant to 11 U.S.C. § 1121, hereby sets forth the following as its proposed plan of reorganization dated December 16, 2024 (the "Plan"):

## ARTICLE 1
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below:

1.1. "Administrative Claim" shall mean a claim for administrative expenses under Section 503(b) of the United States Bankruptcy Code that is an Allowed Claim and is entitled to priority in payment pursuant to Section 507(a)(1) of the United States Bankruptcy Code.

1.2. "Allowed Claim" shall mean any Claim, proof of which is filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and in either case, a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Bankruptcy Rules, or an order of the Court, or (b) as to which any objection has been determined by an order or judgment of the Court allowing such Claim in whole or in part that is no longer subject to appeal, de novo review, or certiorari proceeding, and as to which no appeal, de no review, or certiorari proceeding is pending.

1.4. "Bar Date" shall mean September 3, 2024.

1.5. "Nicolet National Bank", (hereinafter "Nicolet"), the Debtor's pre-petition secured lender, with first lien on Debtor's real property.

1.6. "Avoidance Actions" shall mean any claims or causes of action of the Debtor's estate under or pursuant to Code sections 544, 545, 546, 547, 548, 549, 550, 551, or 553.

1.7. "Causes of Action" shall mean, whenever arising, all rights, claims, and causes of action accruing to the Debtor or the Trustee, before, on, or after the Petition Date, and not otherwise settled or compromised pursuant to this Plan or otherwise, including, without limitation, all Avoidance Actions.

# EXHIBIT A

1.8. "Claim" shall mean any right in existence on the Confirmation Date against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) an equitable remedy for a breach of performance if the breach would rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.9. "Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

1.10. "Confirmation Date" shall mean the date upon which the order confirming the Plan is entered by the court in accordance with the provisions of Chapter 11 of the Code.

1.11. "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.12. "Court" shall mean the United States Bankruptcy Court for the Western District of Wisconsin in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.13. "Creditor" shall mean any person or its assignee that holds a claim against the Debtor for unsecured debts, liabilities, demands, or claims of any character whatsoever, including any under-secured creditors.

1.14. "Debtor" shall mean Todd M. Lekan, the Debtor in this chapter 11 case.

1.15. "Domestic Support Obligation" shall mean an unsecured priority claim owed to Heather M. Lekan.

1.16. "Effective Date" shall mean the day that is 14 days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all conditions to effectiveness of the Plan are satisfied.

1.17. "General Unsecured Claim" shall mean an unsecured Claim without priority.

1.18. "IRS" shall mean the United States Treasury, Internal Revenue Service.

1.19. "Krekeler Law" shall mean Krekeler Law, S.C., counsel for the Debtor in this Chapter 11 Case.

1.20. "Petition Date" shall mean the date on which the Debtor filed a voluntary petition for relief under Chapter 7 on October 5, 2023. On April 26, 2024, the Debtor filed his Motion to Convert Chapter 7 Case to Chapter 11. On May 21, 2024, the Bankruptcy Court entered the Order converting the Debtor's case under Chapter 7 to Chapter 11.

1.21. "Plan" shall mean this Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

1.22. "Priority Claim" shall mean a Claim entitled to priority under Section 507(a)(8) of the Code.

1.23. "Rule" and "Rules" shall mean the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules as adopted by the Court.

1.24. "Secured Claim" shall mean a Claim arising on or before the Petition Date (or thereafter upon approval of the Court) that is secured by a valid lien on property in which the Debtor's estate has an interest which is not void or voidable under any state or federal law, including the provisions of the Code.

1.25. "Secured creditors" shall mean creditors who hold a lien, security interest, or other encumbrance which has been properly perfected, as required by law with respect to the property owned by the Debtor, prior to the filing of this case, or thereafter as authorized and ordered by the Court.

1.26. "WI DOR" shall mean the Wisconsin Department of Revenue.

1.27. "Reorganized Debtor" shall mean the Debtor after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

Terms not defined in this Plan that are defined in the Code shall have the meanings stated in the Code.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests herein are hereby classified as follows:

2.1     **Administrative Claims** The costs and expenses of administration of the Debtor's Chapter 11 case, as defined in the Code, including those for which application shall be made, provided said costs and expenses are allowed, approved, and authorized to be paid by the Court. Such costs include all pre-confirmation fees payable under 28 U.S.C. § 1930, which either have been paid or shall be paid on the Effective Date of the Plan, and all post-confirmation fees as required by law.

2.2     **CLASS 1** - The secured claim of Nicolet.

2.3     **CLASS 2** - The secured claim of the IRS.

2.4     **CLASS 3** – The unsecured priority claim of the IRS.

2.5     **CLASS 4** – The unsecured priority claim of the Domestic Support Obligation.

2.6     **CLASS 5** – Any general non-priority unsecured claims which have not been disputed by the Debtor.

2.7     **CLASS 6** – The equity interests of the Debtor, if any.

## ARTICLE 3
## TREATMENT OF CLAIMS AND INTERESTS

**3.1 Administrative Claims.** Administrative claims include all costs and expenses of the administration of the Debtor's case allowed under Section 503(b) of the code and entitled to priority

under Section 507(a)(1) of the Code. The Plan provides for payment in full of all allowed administrative expenses on the effective date of the Plan, unless other treatment is specifically set forth in the Plan. Administrative Priority Claims include fees of professionals employed by the Debtor, including attorneys and accountants, and quarterly United States Trustee fees.

<u>Debtor's Attorney's Fees</u>: Krekeler Law, S.C. ("Krekeler Law") agrees that its claim for attorneys' fees and expenses shall be paid utilizing funds held in the firm's trust account in the amount of $8,830.27, upon approval by the Court of its application for compensation. Such funds shall remain property of the Debtor's bankruptcy estate, and Krekeler Law shall continue to hold all funds in its trust account until this Court enters an order approving and authorizing payment to Krekeler Law upon Krekeler Law's filing of an application for compensation pursuant to the Applicable Bankruptcy Code and Rules.

Any remaining balance approved by the Court, but not covered by the funds held in trust, shall be paid in full of Debtor's net disposable income within one year from the Effective Date. The amount of such fees and expenses to be approved is estimated to be $22,000.00. Such payments, however, shall be made only upon approval by the Court of such administrative expense claims.

<u>United States Trustee Quarterly Fees</u>: Quarterly fees owed to the United States Trustee ("UST") will be paid as incurred and in full as of the Effective Date. The Debtor is not delinquent in any payments to the UST. Quarterly fees may continue to be generated until such time as a final Order is entered closing this case by the Court.

**3.2 CLASS 1 – Secured Claim of Nicolet.** This claimant has a secured claim, as of the Petition Date, in the amount of approximately $50,837.68, which is secured by Debtor's real property located at 9355 Jackson Heights, Harshaw, Oneida County, Wisconsin. The amount of the allowed secured claim shall be paid in full with interest thereon at the rate of 4.25 percent per annum amortized over 15 years with monthly payments in the amount of $476.45, principal and interest until paid in full.

The holder of this claim shall retain its security interest upon Debtor's real property until such time as the allowed secured claim has been paid in full, at which time the holder of this claim shall execute documents reasonably necessary to release its security interest in said real property. All other terms and provisions contained in the loan documents between Debtor and this claimant shall remain in full force and effect.

Class 1 is an unimpaired class.

**3.3 CLASS 2 – Secured Claim of the IRS.** The claim of the IRS is impaired under the Plan. The secured claim of the IRS in the amount of $44,301.76, shall be paid in full with eight percent (8%) interest per annum amortized over forty-six (46) months measured from the Petition Date, to be paid in monthly payments of $1,121.47. Payments made to the IRS for its secured claim are made pursuant to 11 U.S.C. § 1129(a)(9)(D).

Class 2 is an unimpaired class.

**3.4 CLASS 3 – Priority Unsecured Claim of the Internal Revenue Service.** The priority unsecured claim of the IRS in the amount of $19,766.09, shall be paid in full with eight percent (8%) interest over forty-six (46) months measured from the Petition Date, to be paid in monthly

payments of $500.37. Payments to the IRS for its priority unsecured claim are made pursuant to 11 U.S.C. § 1129(a)(9)(C).

Class 3 is an unimpaired class.

**3.5 CLASS 4 – Priority Unsecured Claim of Domestic Support Obligation.** Debtor is current with his domestic support obligation of $3,000.00 per month and shall continue to pay such amount as required during and after the term of the Plan pursuant to the terms of the Stipulation and Order Regarding Non-Modifiable Limited Term Maintenance entered into by the Debtor and his former spouse on September 9, 2022. Payments of the Debtor's Domestic Support Obligation are made pursuant to 11 U.S.C. § 1129(a)(14).

Class 4 is an unimpaired class.

**3.6 CLASS 5 – All General Non-Priority, Unsecured Claims.** Class 4 consists of all allowed general non-priority unsecured claims which total approximately $313,731.15 according to claims scheduled as undisputed, non-contingent, and liquidated or filed proofs of claim. Payments to these creditors shall be made pro-rata based on the Debtor's projected net disposable income. The Debtor's net disposable income is projected to be $3,556.00 before accounting for unpaid Administrative Claims estimated to be $22,000.00.

Therefore, for the first year of the Plan, the Administrative Expense Claim is estimated to receive $1,834.00 per month. As a result, for first year of Plan, Class 5 claimants will share approximately $1,889.00 per month on pro rata basis. Beginning the second year of the Plan and for 34 months, Class 5 claimants will share approximately $3,723.00 per month on a pro rata basis. For the remaining 14 months of the Plan, Class 5 claimants will share approximately $5,344.00 per month on a prorated basis.

Class 5 is an impaired class.

**3.7 CLASS 6 – Equity Interests of the Debtor.** All equity interests of the Debtor shall be retained by him upon confirmation of this Plan.

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any and all executory contracts or unexpired leases to which the Debtor was a party as of the Petition Date shall be deemed rejected as of the Effective Date, *except* with respect to the following parties:

4.1. **Residential Lease.** The Confirmation Order shall authorize and approve the Debtor's assumption of his current residential lease for the property located at 1520 Elm Street, Apt #322, Wausau, Wisconsin 54401.

4.2 **Residential Lease.** The Confirmation Order shall authorize and approve the Debtor's assumption of his daughter's lease that he is a co-signer on with Marissa Metelica and Jason Reif, 1034 Halsey St., #1, Brooklyn NY 11207-0000.

# ARTICLE 5
# IMPLEMENTATION OF THE PLAN

5.1     To effectuate the proposed Plan, the Debtor shall maintain his employment with Gestalt Enterprises and continue operations of his LLC, Todd Lekan LLC. The Debtor will utilize profits, revenues, income from operations, income from the Debtor's employment, and cash on hand on the Effective Date.

5.2     Except as may be expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor. The Reorganized Debtor reserves the right to sell or transfer any of its property, with the proceeds to be distributed to lien holders according to their priorities.

5.3     Upon the Effective Date of the Plan, creditors shall have 14 business days to satisfy all outstanding judgment liens, and dismiss all pending suits, except as particularly set forth herein.

5.4     Interest on all allowed secured claims shall commence upon the Effective Date of the Plan.

5.5     Unless otherwise expressly set forth herein, payments to creditors under the Plan shall commence within 30 days from the Effective Date of this Plan.

5.6     The Reorganized Debtor may prepay any amount to any Class at any time without penalty.

5.7     No distributions of under $5.00 shall be made by the Reorganized Debtor, and no payments shall be made on claims under that amount. Any distribution checks which have not been negotiated and cleared six months after their distribution may be cancelled by the Reorganized Debtor without further liability for that distribution.

5.8     All distributions shall be mailed to creditors at the addresses shown on the Debtor's schedules, except those creditors who have filed Proofs of Claim or notices of appearance in this action shall have their distribution checks sent to the addresses shown on those documents. Any creditor may change the address for mailing of its distribution check by written notice to counsel for the Debtor. Any distribution checks properly sent to such addresses which are returned shall become the property of the Reorganized Debtor without further liability for such distributions.

5.9     Confirmation of this Plan shall not preclude or estop the Debtor from pursuing any claims of the estate, including any Avoidance Actions, nor any other claims against any of the Debtor's creditors for offset.

5.10    The Debtors may prepay any amount to any Class at any time without penalty.

5.11    The Reorganized Debtor.  The Debtor shall emerge from Bankruptcy as the Reorganized Debtor, with all of the rights, powers, duties and obligations as set forth below.

(a) <u>Vesting of all Property</u>.  Except as expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor.

(b) <u>Governance, Powers and Duties</u>.  On and after the Effective Date, the holders of the Interests in the Debtor shall be the managing partners of the Reorganized Debtor, and the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Court. The Reorganized Debtor shall also have the powers, duties, and obligations set forth in this Plan. On and after the Effective Date, all actions required of the Debtor shall be taken by the Reorganized Debtor, or its designee, in the name of and on behalf of the Debtor and its bankruptcy estate. The Reorganized Debtor shall be authorized to execute documents on behalf of the Debtor and its bankruptcy estate. The duties, responsibilities and obligations of the Reorganized Debtor include, but are not limited to, all matters for which the Court is retaining jurisdiction, including the following:

- making Distributions under the Plan;

- preparation and filing of tax returns, on behalf of the Debtor, its bankruptcy estate, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code;

- requesting and receiving of W-9 federal tax forms for any party who is entitled to receive a distribution on account of a Claim or Interest;

- prosecution and resolution of Causes of Action, if any, including any Avoidance Actions;

- Claims objections and reconciliation;

- payment of any post-confirmation fees due to the Office of the United States Trustee; and

- the compromise and settlement of Claims, Causes of Action, and other proceedings and matters.

(c) <u>Attorney Client Privilege to Extend to Reorganized Debtor</u>. The Reorganized Debtor shall stand in the same position as the Debtor with respect to any right the Debtor may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtor shall succeed to all of the Debtor's rights to preserve, assert or waive any such privilege.

(d) <u>Retention of Professionals</u>. The Reorganized Debtor may retain such attorneys, accountants, advisors, expert witnesses, and other professionals as it shall consider advisable without necessity of approval of the Court. Persons who served as professionals to the Debtor prior to the Effective Date may serve as

professionals to the Reorganized Debtor. The fees and expenses of the Reorganized Debtor and professionals retained by it shall be paid in the ordinary course of business and without Court review or approval.

(e) <u>Causes of Action Retained and Preserved.</u> All causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan shall be retained by the Reorganized Debtor and preserved. Except as otherwise expressly provided in the Plan, the Reorganized Debtor retains all rights, claims, defenses, setoffs, recoupment, and causes of action the Debtor or its estate may have against any third parties and may pursue and/or enforce such retained rights, claims, defenses or causes of action in accordance with applicable non-bankruptcy law.

(f) <u>Capital Gains Taxes.</u> Any taxes payable on capital gains realized by the Debtor as a result of the disposition of certain assets under the Plan, or by any person or entity contributing assets to the Debtor under the Plan, shall be paid when and as they become due. The Debtor reserves the right to change the contemplated structure of the Reorganized Debtor, including the ability to decline any assets that would be transferred to it under this Plan, in order to minimize the overall tax liability; provided, that such changes shall not relieve the Debtor from the obligation to treat Claims as provided in Articles 3.

## ARTICLE 6
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction, and if the case is closed reopen it, for the following purposes, or as otherwise permitted by law:

6.1 **Objections to Claims.** To hear and determine any objections to the allowance of Claims, and requests for the estimation or liquidation of Claims.

6.2 **Fee Applications.** To hear and determine any and all applications for compensation of professional services and disbursements.

6.3 **Avoidance Actions**. To hear and determine any Avoidance Action or other proceedings to set aside (or preserve for the benefit of the Estate) or recover any property under applicable provisions of the Bankruptcy Code or other federal or state law.

6.4 **Recover Estate Assets.** To recover all assets of the Estate, wherever and however located.

6.5 **Pending Matters.** To hear and determine any pending applications, motions, adversary proceedings, and other contested matters not resolved by the Plan.

6.6 **Modification of Plan.** To modify the Plan to the extent permitted by the Plan and the applicable provisions of section 1127 of the Bankruptcy Code.

6.7     **Enforcement of Payments, Rights, and Interests.** To enforce the terms and provisions of payments, rights, and interests required or created by the Plan.

6.8     **Executory Contracts and Unexpired Leases**. To hear and determine all Claims or controversies arising from the assumption or the rejection of any executory contracts or unexpired leases and to consummate their assumption or the rejection.

## ARTICLE 7
## CLOSING AND REOPENING OF THE CASE

7.1     **Closing**.  Upon substantial consummation of the Plan, the Debtor may apply for an order closing the case under section 350(a) of the Bankruptcy Code. The Plan shall be deemed to be substantially consummated after (a) the order confirming the Plan has become final; (b) the Debtor or the Reorganized Debtor has assumed the business of the management of the property dealt with by the plan; (c) payments under the Plan have commenced, and (d) all motions, applications, contested matters, and adversary proceedings have been finally resolved.

7.2     **Reopening**.  The case may be reopened pursuant to Bankruptcy Code § 350(b) to administer assets, to grant the Debtor other relief, to seek conversion or dismissal upon occurrence of a subsequent material default under the plan, to hear and resolve any matter or proceeding over which the Court has retained jurisdiction, or for other cause.

## ARTICLE 8
## OTHER REQUIRED PROVISIONS

8.1     Any payments made or to be made by the Debtor for services or for costs and expenses in connection with this case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of the Court, as reasonable.

8.2     All quarterly fees payable under 28 U.S.C. Section 1930 shall be paid on or before the effective date of the Plan, as required by 11 U.S.C. Section 1129(a)(12). The reorganized Debtor shall continue to file quarterly fee statements and pay quarterly fees when due until this case is converted, dismissed, or closed. The Bankruptcy Court shall retain jurisdiction necessary to enforce the provisions of this paragraph.

8.3     Confirmation of this Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under this Plan.

8.4     The Debtor has no retirement benefits which are required to be continued under 11 U.S.C. Section 1129(a)(13).

# ARTICLE 9
# CONCLUSION

The proposed Plan set forth herein reflects the Debtor's best efforts to reorganize in an orderly fashion. The Plan attempts to provide full payment to secured creditors and a substantially greater dividend to unsecured creditors than they are likely to receive if Debtor liquidates his assets.

This Plan deals fairly and equitably with all of the creditors involved and approval of this Plan is in the best interests of the Debtor's creditors.

Dated this 16th day of December 2024.

**KREKELER LAW, S.C.**

By: /s/ Noe J. Rincon
Noe J. Rincon, State Bar No. 1124893
*Attorneys for the Debtor in Possession,*
*Todd M. Lekan*

**ADDRESS:**
26 Schroeder Ct, Ste. 300
Madison, WI  53711
Phone:  608-258-8555
Fax:  608-258-8299

**Projected Business Income**      **Exhibit B**

2025

| MONTH/YR | GROSS | EXPENSES | NET |
|---|---|---|---|
| Jan-25 | 4,800.00 | 7,338.64 | (2,538.64) |
| Feb-25 | 5,225.00 | 5,308.36 | (83.35) |
| Mar-25 | 12,750.00 | 6,665.26 | 6,084.75 |
| Apr-25 | 11,000.00 | 9,867.92 | 1,132.09 |
| May-25 | 13,937.50 | 10,820.65 | 3,116.85 |
| Jun-25 | 6,488.00 | 5,506.90 | 981.10 |
| Jul-25 | 4,500.00 | 318.49 | 4,181.52 |
| Aug-25 | 20,000.00 | 12,018.86 | 7,981.14 |
| Sep-25 | 19,500.00 | 14,100.83 | 5,399.17 |
| Oct-25 | 17,955.00 | 20,213.85 | (2,258.85) |
| Nov-25 | 15,375.00 | 11,391.86 | 3,983.14 |
| Dec-25 | 8,000.00 | 3,996.38 | 4,003.62 |
| Total | 139,530.50 | 107,547.97 | 31,982.53 |
| Average/Mo | 11,627.54 | 8,962.33 | 2,665.21 |

# EXHIBIT B

| | | | |
|---|---|---|---|
| | **Average Projected Monthly Income** | | |
| | Avg. Mo. Business Income | $11,627.54 | |
| | Wage Income | $12,169.54 | |
| | **Total Income** | **$23,797.08** | |
| | | | |
| | **Expenses** | | |
| | Rent | $1,300.00 | |
| | Rental Insurance | $264.00 | |
| | Utilities | $468.00 | |
| | Food/Household Supplies | $800.00 | |
| | Clothing | $200.00 | |
| | Personal Care | $400.00 | |
| | Medical/Dental | $150.00 | |
| | Transportation | $500.00 | |
| | Entertainment | $300.00 | |
| | Life Ins. | $42.00 | |
| | Health Ins. | $651.00 | |
| | Vehicle Ins. | $89.00 | |
| | Vehicle Payment | $850.00 | |
| | Domestic Support Obligation | $3,000.00 | |
| | **Total Personal Expenses** | $9,014.00 | |
| | **Net Personal Income** | $3,155.54 | |
| | | | |
| | **Total Mo. Business Expenses** | $8,962.33 | |
| | **Net Mo. Business Income** | $2,665.21 | |
| | | | |
| | **Disposable Income (Pers. & Bus.)** | $5,820.75 | |
| | **Secured Payments (Nicolet & IRS)** | $1,597.92 | |
| | **Priority Payment (IRS)** | $500.37 | |
| | **Net Disposable Income (Unsec. & Admin.)** | **$3,722.46** | |
| | | | **EXHIBIT C** |

# EXHIBIT C

|  | Todd Lekan | | | | | | | EXHIBIT D | |
|---|---|---|---|---|---|---|---|---|---|
|  | 12/15/2024 | | | | | | | | |
|  | LIQUIDATION ANALYSIS | | | | | | | | |
|  | | | | | | | | | |
| **REAL PROPERTY** | | | | | | | | | |
| Description | | FMV | Debt | Secured | | Creditor | | Exempt Equity | Net Equity |
| 3 Parcels - Oneida County, WI | | $ 69,590.00 | $ 50,837.68 | $ 50,837.68 | | Nicolet Bank | | $ - | $ - |
|  | | | $ 44,301.76 | $ 18,752.32 | | IRS - Secured | | $ - | $ - |
|  | | $ 69,590.00 | | $ 69,590.00 | | | | | $ - |
|  | | | | | | | | | |
| **PERSONAL PROPERTY** | | | | | | | | | |
| Description | | FMV | Debt | Secured | | Creditor | | Exempt Equity | Net Equity |
| 2012 Harley Davidson Softail | | $ 11,010.00 | | $ 11,010.00 | | IRS - Secured | | $ - | $ - |
| 2007 Dodge Charger | | $ 5,096.00 | | $ 5,096.00 | | IRS - Secured | | $ - | $ - |
| 1997 Sylvan 16' Sea Monster | | $ 1,850.00 | | $ 1,850.00 | | IRS - Secured | | $ - | $ - |
| Household Goods | | $ 150.00 | | $ 150.00 | | IRS - Secured | | $ - | $ - |
| Electronics | | $ 450.00 | | $ 450.00 | | IRS - Secured | | $ - | $ - |
| Guitar;Fishing Gear;Golf Clubs;Carpentry tools | | $ 1,650.00 | | $ 1,650.00 | | IRS - Secured | | $ - | $ - |
| Shotgun; pistol; gunsafe | | $ 600.00 | | $ 600.00 | | IRS - Secured | | $ - | $ - |
| Clothing;watch | | $ 900.00 | | $ 900.00 | | IRS - Secured | | $ - | $ - |
| Ally Checking and Savings | | $ 3,999.22 | | $ 3,993.44 | | IRS - Secured | | $ 5.78 | $ - |
| Krekeler Law Trust Account | | $ 9,830.27 | | $ - | | | | $ 4,994.22 | $ 4,836.05 |
| Todd Lekan LLC; computers | | $ 3,500.00 | | $ - | | | | $ 3,500.00 | $ - |
| Carepool - Stock Option Agreement | | $ - | | $ - | | | | | $ - |
| Carepool - Stock Option Agreement | | $ - | | $ - | | | | | $ - |
| Ladder Life Ins. - term | | $ - | | $ - | | | | | $ - |
| Ladder Life Ins. - term | | $ - | | $ - | | | | | $ - |
| | | | | | | Nonexempt Equity in Personal Property | | | $ 4,836.05 |
| | | | | | | Nonexempt Equity in Real Property | | | $ - |
| | | | | | | Net Equity | | | $ 4,836.05 |
| | | | | | | Priority Unsecured IRS Claim | | | $ 19,766.09 |
| | | | | | | Available for General Unsecured Creditors | | $ | (14,930.04) |

EXHIBIT D